# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| JOHN SWAYNIE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | NO. 3:08-CV-122 |
| ) | |
| SUPERINTENDENT, ) | |
| ) | |
| Respondent. ) | |

## **OPINION AND ORDER**

This matter is before the Court on an amended Petition under 28 U.S.C. Paragraph 2254 for Writ of Habeas Corpus by a person in State Custody filed by John Swaynie, a *pro se* prisoner, on April 24, 2008. For the reasons set forth below, the petition (DE# 4) is **DENIED.**

BACKGROUND

In deciding this habeas petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Swaynie's burden to rebut this presumption of correctness with clear and convincing evidence. *Id.* Swaynie is serving an aggregate 70-year sentence after he was convicted in Tippecanoe County Superior Court of attempted murder and burglary. *State v. Swaynie*, 79D02-9811-CF-00126.

In the early morning hours of November 18, 1998, Swaynie broke

into the home of Loretta Rush ("Mrs. Rush"), who had served as Swaynie's guardian-ad-litem in the 1980s when he was a minor. *Swaynie v. State*, 762 N.E.2d 112, 113 (Ind. 2002). When her husband Jim Rush ("Mr. Rush") came downstairs to investigate, Swaynie attacked him, pinning him on the floor and choking him, while yelling up to Mrs. Rush, "I'm killing your husband." *Id.* When Mrs. Rush could not get the telephone to work to call the police, she jumped out a window, breaking her shoulder in the process, in order to get help from a neighbor. *Id.* The neighbor ran to the Rush home and discovered Swaynie choking Mr. Rush. *Id.* He was able to pry Swaynie's hands away and pin him down while Mr. Rush called the police. *Id.* The police arrived and arrested Swaynie.[1] *Id.*

Swaynie was charged with attempted murder, burglary, and confinement. *Swaynie*, 762 N.E.2d at 113. At trial, he raised an insanity defense, based largely on the evaluation of Dr. Martin

---

[1] The trial testimony revealed additional details regarding the events leading up to the crime. The record shows that in addition to serving as Swaynie's guardian-ad-litem, Mrs. Rush developed a personal relationship with him, allowing him to visit her home on various occasions and purchasing him things that he needed. The two stayed in touch by telephone after Swaynie became an adult. A few days prior to the break-in, Swaynie, by this time 26-years old, had unexpectedly returned to Indiana after living out of state for several years, mostly recently in Phoenix, and asked to live in the Rushes' basement. The Rushes declined to allow Swaynie to move in, but gave him a few meals, some clothing, and ultimately a bus ticket so that he could return to Phoenix. Mr. Rush drove Swaynie to the bus station and watched him get on the bus, but at some point Swaynie got off the bus and made his way back to the Rushes' home. (*See* DE# 17, Trial Tr. at 752-1207.)

Abbert, a psychiatrist who diagnosed him as a paranoid schizophrenic while he was housed at the jail. (DE# 17, Trial Tr. at 1656-1850.) On September 22, 1999, the jury convicted him of attempted murder, burglary, and confinement. *Swaynie*, 762 N.E.2d at 113. The trial court merged the confinement conviction with the attempted murder conviction, and sentenced him to 50 years on the attempted murder conviction and 20 years on the burglary conviction, to run consecutively. *Id.*

On direct appeal, Swaynie raised four arguments: (1) his sentences for burglary and attempted murder violated Indiana's constitutional protection against double jeopardy; (2) the trial court erred in denying the defense motion in limine to exclude Mrs. Rush's statements regarding information she obtained as Swaynie's guardian-ad-litem; (3) the trial court erred in imposing a consecutive sentence; and (4) the trial court erred in failing to properly instruct the jury. (*Id.*; DE# 4 at 18.) The Indiana Court of Appeals only reached grounds one and two, which it found dispositive. The court found that Swaynie had waived his argument regarding the motion in limine, but agreed with the double jeopardy argument and reversed Swaynie's burglary conviction. *Swaynie*, 762 N.E.2d at 113. The state sought transfer to the Indiana Supreme Court, which reversed the Court of Appeals and affirmed Swaynie's convictions and sentence in all respects. *Id.* at 114-15.

In September 2005, Swaynie filed a petition for post-

conviction relief, claiming that: (1) he was denied counsel at a critical stage since his counsel was notified prior to his evaluation by Dr. Abbert; (2) trial counsel was ineffective in failing to object to the admission of evidence pertaining to Dr. Abbert's evaluation; and (3) appellate counsel was ineffective in failing to raise this issue on direct appeal. *See Swaynie v. State*, 866 N.E.2d 875 (Table), 2007 WL 1310433 (Ind. App. Ct. May 7, 2007) (unpublished). The Indiana Court of Appeals set forth the details surrounding Swaynie's petition for post-conviction relief as follows:

> Swaynie filed an amended pro se petition for post-conviction relief, asserting that during his pretrial incarceration, a jail physician examined him because he was exhibiting 'volatile behavior, eruptions and suspiciousness.' The record shows that Swaynie was referred to another physician, Dr. Martin Abbert, who performed a subsequent mental evaluation. Swaynie's trial counsel was not informed of the testing at the time, trial counsel had already filed a notice to interpose an insanity defense. However, the trial court had not entered an order on the notice.
>
> Following Dr. Abbert's evaluation, the trial court conducted a competency hearing. At that hearing, the court-appointed physicians relied on Dr. Abbert's prior evaluation and diagnosis of Swaynie. In light of these circumstances, Swaynie argued . . . that he was denied the effective assistance of trial counsel because his attorney failed to represent him at a 'critical stage of the proceedings' when he was evaluated by Dr. Abbert.
>
> The post-conviction court reviewed Swaynie's petition and the State's answer and determined that there 'are no facts alleged' that supported Swaynie's claim for relief. In its order, the post-conviction court observed that medical care received from a jail physician, including a mental examination 'as recommended by the jail's physician,' does not constitute a 'critical

> stage' of the proceedings that requires a right to counsel.

*Swaynie*, 2007 WL 1301433 at *1. The trial court also concluded that this issue was waived because trial counsel did not object to the admission of the evidence at trial, and appellate counsel did not raise the issue on direct appeal. *Id.* The court further concluded that trial counsel was not ineffective in failing to object to the admission of Dr. Abbert's testimony, and appellate counsel was not ineffective for failing to raise the issue on direct appeal. *Id.* at *2. Accordingly, the court denied the petition without an evidentiary hearing. *Id.* The Indiana Court of Appeals affirmed the denial of post-conviction relief. *Id.* at *4-5. Swaynie sought transfer to the Indiana Supreme Court, which was denied. (DE# 10-5.)

On April 24, 2008, Swaynie filed this federal habeas petition raising the following three claims: (1) he was denied counsel at a critical stage in violation of the Sixth Amendment; (2) his appellate counsel was ineffective; and (3) the post-conviction court violated Indiana's post-conviction rules by failing to conduct an evidentiary hearing before denying the petition. (DE# 4.)

DISCUSSION

This petition is governed by the provisions of the Anti-Terrorism and Death Penalty Act of 1996 ("AEDPA"). *See Lindh*

*v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can only grant an application for habeas relief if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim---
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court or if the state court reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application"

clause if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively unreasonable." *Id.*

Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). The exhaustion requirement is premised on concerns of comity; the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claims in one complete round of state review. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845.

The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a habeas petition when either: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state law procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would

7

now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Perruquet*, 390 F.3d at 514. When a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted. *Boerckel*, 526 U.S. at 853-54.

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986).

A habeas petitioner may also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman*, 501 U.S. at 750. Under this narrow exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### A. Claim One

In claim one, Swaynie asserts that he was denied counsel at a critical stage of the proceedings in violation of his Sixth Amendment rights. (DE# 4 at 5, 10-17.) The respondent argues that this claim is procedurally defaulted. (DE# 11 at 8.)

A review of the record reveals that Swaynie raised this claim in his post-conviction proceedings, but did not object at trial or raise the issue on direct appeal, even though the claim was premised on the trial record. Accordingly, the Indiana Appellate Court found that the claim had been waived. *Swaynie*, 2007 WL 1310433, at *3. A federal habeas court will not review a question of federal law if the state decision rested on an adequate and independent state ground for dismissal, including a state procedural rule. *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009). A finding of waiver by the state court is considered an adequate and independent state ground. *Id*. Accordingly, this claim is procedurally defaulted. Swaynie did not file a traverse in support of his petition and has not otherwise articulated a basis for this court to excuse his procedural default, and therefore, the court does not reach claim one on the merits.

### B. Claim Two

Next, Swaynie claims that his appellate counsel provided ineffective assistance on direct appeal. (DE# 4 at 5, 18-22.) "The

Sixth Amendment entitles criminal defendants to the 'effective assistance of counsel'---that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, 130 S.Ct. 13, 16 (2009). The governing Supreme Court case for resolving an ineffective assistance claim is *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel under *Strickland*, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. The court's review of counsel's performance is "highly deferential," and the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004). The prejudice prong requires the petitioner to show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Where it is expedient to do so, a court may resolve an ineffective assistance claim solely on the prejudice prong; in other words, where the petitioner cannot establish prejudice, there is no need to consider in detail whether counsel's performance was constitutionally deficient. *See Strickland*, 466 U.S. at 697; *Watson v. Anglin*, 560 F.3d 687, 689-90 (7th Cir. 2009).

An ineffective assistance of appellate counsel argument is also subject to the *Strickland* analysis. *Howard v. Gramley*, 225

F.3d 784, 789-90 (7th Cir. 2000). To prevail on such a claim, the petitioner must show that appellate counsel's performance was "unreasonably deficient" and that this inadequacy resulted in prejudice. *Id*. at 790. On the deficiency prong, the petitioner must show that counsel failed to present a significant and obvious issue on appeal; however, counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Where appellate counsel has presented some arguments on appeal but not others, it will be difficult to demonstrate that counsel was incompetent. *Id*. On the prejudice prong, the petitioner must demonstrate "a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal," if the claim had been presented to the appellate court. *Howard*, 225 F.3d at 789-90.

Here, Swaynie argues that appellate counsel should have raised a claim on direct appeal that he was denied counsel at a critical stage in violation of the Sixth Amendment in connection with Dr. Abbert's evaluation. (DE# 4 at 21.) The record shows that appellate counsel raised several issues on appeal, including one that resulted in a reversal by the Indiana Appellate Court, and, had it not been ultimately rejected by the Indiana Supreme Court, would have resulted in a 20-year reduction in Swaynie's sentence. *See*

11

*Swaynie*, 762 N.E.2d at 113. Given the deference that must be afforded to counsel's performance at this stage, Swaynie has not established that counsel was incompetent in deciding what issues to raise on appeal. Nor has Swaynie established a reasonable probability that raising the issue would have resulted in a new trial or reversal of his conviction. This claim was ultimately rejected in the post-conviction proceedings on grounds of waiver, in part because trial counsel failed to object to the admission of the evidence at trial, and there is no indication that the claim would have fared any better on direct appeal. *See White v. State*, 687 N.E.2d 178, 179 (Ind. 1997) (defendant must contemporaneously object to admission of evidence at trial to preserve the issue for appeal). Accordingly, this claim has no merit.

Although it is not clear, it appears Swaynie may also be claiming that appellate counsel erred in failing to argue that trial counsel was ineffective in not objecting to the admission of Dr. Abbert's testimony in the first place.[2] (*See* DE# 4 at 19-22.) This claim was raised in the post-conviction proceedings and was rejected on the merits. Based on the record, the state court's

---

[2] Under Indiana law, an ineffective assistance claim may but is not required to be brought on direct appeal; if the claim requires development or consideration of evidence outside the trial record, it is appropriate to wait until the post-conviction proceedings to raise the claim. *See People v. Weeks*, 914 N.E.2d 1175, 1182 (Ind. App. Ct. 2009). Here, it appears that such a claim could have been raised based on the trial record itself, although as discussed above, the claim would have been unavailing in any event.

denial of this claim was not unreasonable.

Deciding the claim requires the Court to consider the reasonableness of trial counsel's actions, since appellate counsel cannot be faulted for failing to raise the claim if it had no merit in any event. *See Howard*, 225 F.3d at 789-90. The record indicates that trial counsel may have had a basis to object to the admission of evidence pertaining to Dr. Abbert's evaluation if the state had sought to introduce it.[3] *See, e.g., Satterthwite v. Texas*, 486 U.S. 249 (1988) (state's use of psychiatric evaluation of defendant conducted without notice to defense counsel after defendant had raised insanity defense violated his Sixth Amendment right to counsel); *Estelle v. Smith*, 451 U.S. 454, 471 (1981) (defendant's Sixth Amendment right was violated when counsel was not notified of psychiatric evaluation later used by state to prove future dangerousness at penalty phase). However, it was not the *state* that sought to use Dr. Abbert's evaluation at trial; it was Swaynie who introduced Dr. Abbert's testimony as part of his defense case. (*See* D#E 17, Trial Tr. at 1656-1763.) Notwithstanding any potential problems with how the evaluation occurred, trial counsel chose to

---

[3] The state court determined that Swaynie's evaluation by Dr. Abbert was not a critical stage of the proceedings at which he was entitled to counsel, finding the Supreme Court case law on this issue distinguishable. *Swaynie*, 2007 WL 1301433 at *3-4. Given that Swaynie's free-standing denial of counsel claim is waived and the ineffective assistance claim fails even assuming the evaluation constituted a critical stage, the court does not consider this determination in detail.

13

use Dr. Abbert's evaluation as the cornerstone of Swaynie's insanity defense. This was not an unreasonable strategy under the circumstances.

The record shows that the two state-appointed doctors who examined Swaynie to determine his competency concluded that although he had mental impairments, he was not unable to appreciate the wrongfulness of his actions at the time of the offense.[4] (DE# 17, Competency Hearing Tr. at 665-85; Trial Tr. at 1885-1955.) They both gave deference to Dr. Abbert's earlier diagnosis of paranoid schizophrenia, but because Swaynie had been taking medication prescribed by Dr. Abbert for several months, neither found Swaynie to be exhibiting delusions or other characteristics of this disease at the time of their evaluations. (*Id.*) Dr. Abbert's evaluation thus provided the main support for Swaynie's claim that he was suffering from delusions the night of the attack.

Although Dr. Abbert did not give an opinion on whether Swaynie was sane at the time of the offense (since he evaluated him only for purposes of treatment), he described how he examined Swaynie at the request of the jail doctor after Swaynie had been exhibiting bizarre and disruptive behavior at the jail. (DE# 17, Trial Tr. at 432-38.) He described how Swaynie was exhibiting delusions and

---

[4] These two doctors testified in the state's rebuttal case after Dr. Abbert testified for the defense. (DE 17, Trial Tr. at 1855-1996.) The court notes that Dr. Abbert's testimony came in via his prior deposition because he was out of town the week of the trial. (*See id.* at 1660-1760.)

14

other symptoms of paranoid schizophrenia during the evaluation, and he opined that Swaynie had been functioning poorly within the past year (which included the time frame in which the offense occurred) and was in need of medication. (*Id.* at 432-38, 445-96.) He testified that Swaynie told him he had broken into the house that night because he believed Mr. Rush was abusing the family and the family dog, and that the Rushes had been stealing money from him. (*Id.* at 442-43.) Dr. Abbert also provided helpful testimony that Swaynie may have appeared more sane to the two doctors who examined him for purposes of the competency hearing because he had been on medication for a few months; he opined that this may have allowed Swaynie greater insight into the delusional nature of the beliefs he claimed to have held at the time of the offense. (*Id.* at 440-60.)

Counsel not only relied on the substance of Dr. Abbert's testimony, he also used the circumstances of the evaluation--the fact that it was independently initiated by jail personnel several months prior to trial--to counteract the state's arguments that Swaynie was concocting the insanity defense for purposes of trial. (*Id.* at 1765-67, 2110-36.) Counsel also highlighted this fact by introducing testimony of a fellow inmate who described Swaynie's bizarre behavior leading up to Dr. Abbert's evaluation, and Swaynie's subsequent improvement after he began taking medication prescribed by Dr. Abbert. (*Id.* at 1625-56.) Given that Dr. Abbert's

15

testimony provided considerable support for Swaynie's insanity defense, it was not unreasonable for counsel to use this evidence.

Likewise, there is no indication that had counsel objected and Dr. Abbert's testimony been excluded, the result of the proceeding would have been different. The evidence against Swaynie was overwhelming. There were several eye-witnesses to the attack, including Mrs. Rush (who at the time of trial was a Tippecanoe County Superior Court Judge), Mr. Rush, and their neighbor. (*Id.* at 760-1250.) A police officer testified that as Swaynie was being led out of the home following his arrest, he lunged at Mrs. Rush, telling her that he had hurt Mr. Rush "real fucking bad" and would be "back." (*Id.* at 1253.) There were letters introduced into evidence that Swaynie admitted writing while he was in jail calling Mrs. Rush a "crack whore," and stating "I hate the bitch" repeatedly over the course of several pages. (*Id.* at 1380-96, 1826-27.)

Although Swaynie testified on his own behalf in support of his insanity defense, describing the delusions he was having that night, his testimony was certainly less persuasive than Dr. Abbert's. (*See id.* at 1765-1848.) In addition to the prior offenses that came in as a result of his decision to testify, on cross-examination Swaynie admitted lying in the past and also acknowledged his belief that some mental health professionals could

16

be "easily fooled."[5] (*Id.* at 1826-40, 1843, 1844-88.) Based on the record, there is no indication that had counsel objected and successfully obtained the exclusion of Dr. Abbert's testimony, the result of the proceeding would have been more favorable to Swaynie. Because Swaynie was not prejudiced by any alleged ineffective assistance of trial counsel, appellate counsel cannot be faulted for failing to raise a claim on this ground in the direct appeal.

In summary, the Indiana Appellate Court's denial of this claim was not unreasonable and, accordingly, the claim is denied.

### C. Claim Three

Finally, Swaynie claims that the post-conviction court erred in denying his petition without an evidentiary hearing in violation of Indiana Post-Conviction Rules. (DE# 4 at 6, 23-24.) Relief in a federal habeas corpus proceeding is only available for a violation of the U.S. Constitution or laws. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Accordingly, Swaynie's claim regarding an error of state law is not cognizable in this proceeding.

---

[5] Swaynie was also questioned about alleged statements he made to his cell mate, who sent Mrs. Rush a letter warning her that Swaynie had been bragging about beating the charges and said he intended to kill the Rushes when he got out of jail. (DE 17, Trial Tr. at 1826-32.) The cell mate's letter and the transcript of his subsequent interview with police were admitted at sentencing. (*See id.* at 567, 569-89.)

CONCLUSION

For the reasons set forth above, the petition (DE# 4) is **DENIED**.

DATED: **February 19, 2010**  /s/RUDY LOZANO, Judge
United States District Court